UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| DATA COOLING TECHNOLOGIES LLC, | ) |
| *et al.*,[1] | ) Case Nos. 17-52170 and 17-52177 |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Judge Koschik |
| | ) |

**DATA COOLING TECHNOLOGIES LLC'S STATEMENT RELATING
TO THE AUCTION FOR THE THERMOTECH ASSETS**

Data Cooling Technologies LLC, one of the above-captioned debtors and debtors in possession ("DCT"), hereby files this Statement relating to the Motion of Data Cooling Technologies LLC for an Order (A) Authorizing the Sale of the Thermotech Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (C) Approving Expense Reimbursement; and (D) Granting Related Relief, Docket No. 156 (the "Sale Motion"). In support of this Statement and the Sale Motion, DCT respectfully states as follows:

**Statement**

1. DCT sought approval of a sale of the Thermotech Assets[2] to Thermotech Enterprises, LLC ("TE") pursuant to the Sale Motion, subject to higher and better offers. Although there were no formal bid procedures approved, J&J Mission Critical LLC ("J&J") indicated its desire to submit a bid for the Thermotech Assets (See Docket Nos. 177, 187, 190).

---

[1] The Debtors and the last four digits of each of the Debtors' tax identification numbers following in parentheses are: Data Cooling Technologies LLC (3425); and Data Cooling Technologies Canada LLC (3172).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

{7097308:}

2. On November 21, 2017, the Court held an initial hearing on the Sale Motion at which both J&J and TE proclaimed a desire to bid for the Thermotech Assets. For reasons set forth on the record of that hearing, the Court adjourned the hearing on the Sale Motion until November 28, 2017.

3. On November 28, 2017, DCT conducted an auction on the record in open court. Prior to the auction, all parties were informed that non-economic factors would be considered in evaluating the best bid. At conclusion of the auction, the following final bids (in terms of net value to DCT's estate) were made:

- TE: $775,000 in cash plus $907,387 (in left behind receivables) for a total net economic value of $1,682,387.

- J&J: $967,669 cash plus $769,718 (in left behind receivables) for a total value of $1,737,387; but after subtracting $30,000 for TE's expenses; a net economic value $1,707,387.

4. Thus in terms of total potential economic value to DCT's estate, the bid by J&J at the conclusion of the auction was $25,000 higher than the bid by TE.

5. DCT, after consultation with the Official Committee of Unsecured Creditors (the "Committee") and KeyBank National Association ("KeyBank") determined that it was prepared to move forward with TE's bid notwithstanding the fact J&J offered $25,000 more in total economic contribution. DCT stated on the record certain specific qualitative reasons for supporting TE's bid notwithstanding the fact that the consideration offered by J&J was $25,000 higher at the conclusion of the auction.

6. Unless circumstances would materially change, DCT believes, based on both qualitative and qualitative factors, that it is a proper exercise of its business judgment to accept

the TE bid even though it was not the economically highest at the conclusion of the auction. Applicable case law supports DCT's position.

7. In order to approve a sale of substantially all of the DCT's assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, the Court must find that the DCT has articulated a sound business justification for the sale. Stephens Indus., Inc. v. McClung, 789 F.2d 386, 389–90 (6th Cir.1986) (citing Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir.1983)). A debtor, in conducting a sale process, has a fiduciary duty to maximize the value of its estate. In re Embrace Sys., 178 B.R. 112, 123–24 (Bankr. W.D. Mich. 1995). However, the case law is clear that, in exercising that duty, a debtor is not mechanically required to accept a bid with the highest dollar amount. See In re Quality Stores, Inc., 272 B.R. 643, 647 (Bankr. W.D. Mich. 2002) (uncertainty regarding financial status justified decision to deem lower offer as "best" offer). Indeed, a debtor must demonstrate that the proposed purchase price is not only the highest offer, but the highest and best offer. See, e.g., In re Family Christian LLC, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015) (citing In re Embrace Sys., 178 B.R. at 123).

8. In auction situations, debtors "are permitted, and in fact are encouraged, to evaluate other factors such as contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." See, e.g., In re Scimeca Found., Inc., 497 B.R. 753, 779 (Bankr. E.D. Pa. 2013) (approving somewhat lower all-cash bid instead of higher bid with financing contingency); In re Bakalis, 220 B.R. 525, 532–33 (Bankr. E.D.N.Y. 1998) (approving lower bid instead of higher bid with contingencies and inherent risk). Indeed, the highest bid does not always equate to the best bid for the estate. In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497, 517 (Bankr. N.D. Ala. 2002) ("The First Circuit, as does this Court, acknowledged

that the 'highest bid is not always the best bid.'") (quoting In re Gil–Bern Industries, Inc., 526 F.2d 627, 629 (1st Cir.1975)); In re Diplomat Construction, Inc., 481 B.R. 216 (Bankr. N.D. Ga. 2012). Contemplation of a bid that is lower in price but better overall is the exact situation before this Court after the outcome of the bidding process.

9. DCT cannot overlook the fact that the risks to closing with J&J, as set forth on the record on November 28, simply outweigh the additional $25,000 in consideration in J&J's bid. The risk of collection of retained receivables alone could be significant and many times more than $25,000. DCT believes that the auction process was fair under the circumstances. While it is ultimately DCT's business judgment that carries the day, the Court may also consider the interests of creditors when deciding to approve a sale. See Quality Stores, 272 B.R. at 647 (The court recognized that the creditors' committee and the prepetition lenders were the parties who bore the risk if the sale was not timely closed.). DCT consulted with the Committee and KeyBank on the bids and they both agreed that the TE bid was overall better..

10. The Court also raised a question of any additional scrutiny for TE because of its potential status as an insider or "quasi-insider." DCT does not believe that is an issue that should prevent the Court from approving TE's bid. As previously stated in the Sale Motion and on the record, certain of the principals behind TE and its bid for the Thermotech Assets do work as employees for DCT at the Tampa facility that operates the Thermotech Business. While they do have familiarity with the Thermotech Assets, such parties are not insiders as defined in section 11 U.S.C. 101(31) of the Bankruptcy Code – as they are not officers, directors or persons in control of DCT. And, even if they were, section 363 of the Bankruptcy Code does not prohibit insiders from purchasing estate assets. See In re Quaker City Castings, Inc., 337 B.R. 729 (6th Cir. B.A.P. Nov. 18, 2005). Insiders do not forfeit their good faith status unless it is shown that

they colluded with the debtor or engaged in conduct that was intended to control the sale price or take unfair advantage of other bidders. Id. (citing In re Bakalis, 220 B.R. at 538).

11. Where a proposed sale would benefit an insider of a debtor, the court is required to give heightened scrutiny to the fairness of the value provided by the sale and the good faith of the parties in executing the transaction. See Ricker & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.), 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002); In re Embrace Sys., 178 B.R. at 126; cf. Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.), 269 F.3d 726, 745 (6th Cir. 2001) ("Insider transactions are more closely scrutinized, not because the insider relationship makes them inherently wrong, but because insiders 'usually have greater opportunities for … inequitable conduct.'") (citing Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.), 926 F.2d 1458, 1465 (5th Cir.1991)). The relationship between the principals of TE and DCT was fully disclosed. There is nothing on the record that suggests any collusion took place or that TE had an unfair advantage over J&J. In fact, the risk associated with having an auction and certainty of closing were communicated to J&J during its period of due diligence and prior to both November 21st and 28th hearings.

12. Nevertheless, to the extent the Court determines that it is appropriate to reopen the auction to allow for material improvement to the bids, DCT reserves its rights, after consultation with the Committee and KeyBank, with respect to any evaluation of such revised bids.

November 29, 2017                    Respectfully submitted,

<div style="margin-left: 40%;">
/s/ Sean D. Malloy
Sean D. Malloy (0073157)
Michael J. Kaczka (0076548)
Maria G. Carr (0092412)
McDONALD HOPKINS LLC
600 Superior Avenue, E., Suite 2100
Cleveland, OH 44114
Telephone:  (216) 348-5400
Facsimile:   (216) 348-5474
E-mail:  smalloy@mcdonaldhopkins.com
            mkaczka@mcdonaldhopkins.com
            mcarr@mcdonaldhopkins.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION
</div>